HIPÓLITO LUPERENA, Plaintiff and Appellee, *v.* PUERTO RICO TRANSPORTATION AUTHORITY, Defendant and Appellant.

No. 10409. Argued June 6, 1951.—Decided June 26, 1956.

*Elí Beléndez García* and *Hernán G. Pesquera* for appellant.
*Rafael Arjona Siaca* for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

The temporary permit issued by the Public Service Commission of Puerto Rico to a considerable number of independent public carriers—Hipólito Luperena, plaintiff herein, among them—to render transportation service to passengers along the same routes as the Puerto Rico Transportation Authority, expired on August 25, 1946. Upon failure to renew the temporary authorization, the public carriers af-

fected were compelled to withdraw their vehicles [1] from those routes, causing—because of the sudden impact of such withdrawal—a brief period of abnormality in that public service.

Luperena was the owner of four buses [2] which served those routes. Following a suggestion of the then chairman of the Public Service Commission, Hon. Antonio R. Barceló, Jr., he sent them—on the day following the expiration of the temporary permit—to the shop of the Transportation Authority for a check-up, with a view that the Authority might possibly acquire them. The General Administration of the Authority, Mr. José G. Bloise, had no knowledge of the delivery of the vehicles until shortly before he left for the United States and it was not until after his return that the plaintiff was able to see him in his office to discuss the sale of the buses. On that occasion, after some haggling, they agreed on a price, closed the deal, and plaintiff delivered to Bloise the corresponding licenses which he endorsed to the Authority, receiving payment of the agreed price ordered by the Administrator. Although the Administrator knew that the vehicles were the Authority's possession he did not know whether it had been operating them,[3] and before the deal was

---

[1] Reference is made to 140 vehicles in the evidence.

[2] One of the buses had a capacity of 29 passengers, two of 31 each, and the other of 33.

[3] Bloise's testimony on this particular was as follows:

"Q.—When you ordered that Mr. Luperena be paid for the four buses, did you know whether the Transportation Authority had been operating those buses?

"A.—I could not certify to that because that comes under the Transit Chief."

Another part of his testimony to that effect was as follows:

"Q.—Did he deliver the four buses to the Authority?

"A.—Yes, he delivered them at the shop.

"Q.—Did you know that?

"A.—No, the day he took them there he didn't even speak to me.

"Q.—Don't you know who ordered him to take them there; did you?

"A.—No, sir.

"Q.—Did he personally deliver them?

"A.—He took them there.

"Q.—Do you remember the day when he delivered the buses?

"A.—No, sir.

closed there had been no agreement of any kind between him and Luperena. "The plaintiff at no time consented" —the trial court found— "that his vehicles be operated by the defendant before having purchased them, thereby profiting from them to the plaintiff's own prejudice, when he still owned them"; and when the defendant purchased the buses "there was absolutely no agreement whereby the plaintiff waived the net proceeds yielded by the profitable operation of the buses by defendant . . . or to include such proceeds in the selling price."

From the date of delivery until the date of purchase, the Authority used plaintiff's buses in rendering its own service to the public, and during that period, because of the demand of transportation, they always operated at full capacity.

With those findings of fact, the trial court rendered judgment against defendant for the net proceeds of the operation of such vehicles which amounted to $3,801 after deducting all the expenses incidental thereto from the date of their delivery until the date the Authority purchased them, plus interest, costs and $300 for attorney's fees.

On appeal, the defendant contends that the trial court erred: (1) in finding that plaintiff at no time consented to the operation of the vehicles by the defendant; (2) in concluding that the facts in this case revealed a constructive

"Q.—Did you leave shortly thereafter for the United States?
"A.—Yes, sir.
"Q.—And when you returned from the United States you found that Mr. Luperena's buses were broken?
"A.—I could not say it exactly.
"Q.—That they were in the garage?
"A.—Nor could I answer that.
"Q.—Did you find that the buses were useless?
"A.—I could not answer that either.
"Q.—THAT THEY WERE IN CIRCULATION?
"A.—I could not say.
"Q.—Did you know that the buses were being operated?
"A.—I could not tell you either.
"Q.—You do not know?
"A.—There is a Transportation Chief who knows it. I know that they were in the Authority when I returned."

trust; (3) in concluding that the ownership of the vehicles was conveyed to the defendant at the time it paid the price and that when operated prior to that time the vehicles still belonged to the plaintiff; (4) in concluding that the plaintiff did not waive the profits obtained by the defendant from the operation of the vehicles during the period of 35 days preceding their acquisition; (5) in admitting in evidence plaintiff's proof as to expenses and profits which the vehicles might have produced from his own experience; (6) in concluding that the vehicles yielded to the Authority the sum of $3,801 after deducting the operation expenses, and in granting judgment for that sum; (7) and in concluding that the Authority used plaintiff's vehicles daily during the period from August 26 until September 30.

██ Appellant bases its first assignment of error—in finding that the plaintiff did not give his consent to the operation of the vehicles by the defendant—on the averments contained in paragraph 4 of the complaint, to the effect that the plaintiff delivered his buses to the Authority "under the agreement that the defendant would deliver plaintiff either the proceeds from the use of his vehicles after deducting the operation expenses, or a reasonable amount of money for their daily use."

Its argument that those averments "completely belie the conclusion of the lower court because since they were not contradicted by any evidence whatever at the trial, they constitute a judicial admission," lacks legal basis, for the defendant not only denied those averments in its answer but by its own evidence on that particular it established that there had been no contract or agreement whatever between the plaintiff and the Administrator of the Authority authorizing the use or operation by the latter of the buses of the former. The absence of specific proof on the part of the plaintiff as to the existence of the alleged agreement does not defeat his right—if he has it independently of the existence of the

agreement—nor is it a bar to obtaining, by virtue of the procedural mechanics of the Rules of Civil Procedure in force, the proper relief in the light of the findings of fact and the law.

In its second assignment the appellant challenges the legal basis of the judgment: the application of the doctrine of constructive trust. Since the appellant bases its argument on facts which it deems the trial court should have found proved, and in separate assignments challenges the findings of fact and the conclusions of law set forth by that court, we shall first examine assignments Nos. 3, 4, and 7 and return later to the second assignment.

The lower court did not commit the third error in concluding that the defendant did not acquire a property right to plaintiff's vehicles until the latter and the Administrator of the Authority agreed on a price, and that while the buses were operated by the defendant prior to such agreement they were owned by the plaintiff. The evidence of both parties established that it was not until September 30, 1946, that the sale of those vehicles was perfected, since it was on that date that the plaintiff had an interview where he discussed the terms of sale with the Administrator, and when they agreed on a certain price. "By a contract of purchase and sale—provides § 1334 of the Civil Code, 1930 ed.—one of the contracting parties binds himself to deliver a specified thing and the other to pay a certain price therefor in money or in something representing the same"; and § 1339 "The sale shall be perfected between vendor and vendee and shall be binding on both of them, if they have agreed upon the thing which is the object of the contract and upon the price, even when neither has been delivered." There is no contract unless the requisites of consent, object and cause exist—§ 1213—consent being shown ". . . by the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract" —§ 1214. Under the facts in this case, the lower court correctly held that the defendant did not acquire

a property right to plaintiff's vehicles until September 30 and that during the period from August 26 until that date when the vehicles were operated by the defendant, they belonged to the plaintiff.

 The fourth error, insofar as it challenges the finding *of fact* to the effect that the plaintiff did not waive his claim against the Authority, was not committed, although—as we shall see in considering the second assignment—his right does not include the *profits* but the *compensation for the use* of the buses. Appellant's theory is that the payment of the sum agreed as the price of the vehicles was in satisfaction of any other bona fide claim that plaintiff might have; and that his conduct "hardly equitable" in not disclosing his intention to claim the profits of the operation of the vehicles is sufficient to consider him barred from doing so. Had he "made a timely claim instead of keeping silent," it argues, "the defendant would have included the claim in the price, as it actually understood it had done." Although in a part of his testimony—defendant's sole evidence to that effect— the Administrator affirmed that what the Authority paid to plaintiff included any other claim that he might have against the Authority until that moment,[4] the trial court did not consider it as conclusive of such fact. We do not believe that the court weighed it erroneously for in another part of his testimony the Administrator also affirmed that he did not know—see footnote 3—whether or not plaintiff's vehicles had been used by the Authority. We cannot see how, if the Administrator did not know the basic fact on which the plaintiff's claim could be based, the trial court could accept his statement that "it was clearly stipulated that [the price paid

---

[4] The Administrator stated:

"Mr. Luperena alleged several other things but when we closed the deal as to the price it was clearly stipulated that it was the price of everything that the Transportation Authority owed him.

"Q.—Including the use?

"A.—Absolutely; otherwise he would have taken the buses with him and we would have had to pay for the use."

for the buses] was the price for everything that the Authority owed him," including the use.

█ █ Nor may it be inferred that plaintiff waived payment for the use of his vehicles because of the fact that when he discussed their sale with the Administrator he did not make any claim for such use. In the absence of an express agreement to the effect that the agreed price included the payment for their use, such price, according to our law, was for the intrinsic value of the vehicles in their condition at the time of the completion of the contract of sale on September 30. Section 1357 of the Civil Code, 1930 ed. Their previous use by the Authority, as to which no agreement had been made, was not compensated by such payment.

█ As to the seventh assignment it may be readily dismissed by merely stating that the finding of the trial court to the effect that the Authority used plaintiff's vehicles daily from August 26 until September 30 finds support in plaintiff's evidence, which was not contradicted by the defendant.

█ Let us now turn to the second assignment. The trial court based its judgment on the following conclusion of law supported by our own cases in *McCormick* v. *González,* 49 P.R.R. 460; *Fernández* v. *Laloma,* 56 P.R.R. 348; *Porrata* v. *Fajardo Sugar Co. of P. R.,* 57 P.R.R. 615; *Ruiz* v. *Ruiz,* 61 P.R.R. 794; *Cardona* v. *District Court,* 62 P.R.R. 59; *Compañía Popular* v. *District Court,* 63 P.R.R. 116 and *Freyre* v. *Blasini,* 68 P.R.R. 198: "The obligation of that delivery [of the net proceeds of the operation of the vehicles] clearly arises from the relation established between the parties. The defendant was not at all entitled to operate in its service the plaintiff's property, to his prejudice and for its own benefit. In so doing, it implicitly became the trustee of that property to operate it giving an account to the owner of the profits obtained from its use. To uphold the contrary would be to favor defendant's unjust enrichment at the expense of the plaintiff. The defendant should have so recognized it avoiding the present action."

The appellant argues, in support of this assignment, that the elements of a constructive trust are totally lacking in the case at bar since (1) "the delivery of the vehicles was made without there being any deceit, fraud or artifice whatever on the part of the Authority," and (2) "plaintiff consented to the use of the vehicles by the Authority, for he at no time objected, nor attempted to recover their possession."

We agree with the appellant that the circumstances of this case do not show that there exists a constructive trust by virtue of which the defendant is bound to restore to plaintiff the net profits obtained from the operation of his vehicles, in order to prevent an unjust enrichment. It is a well-settled rule, in case of a constructive trust, that its express creation is not allowed nor its implied creation produced, if the constructive trust is against the law or against public policy. American Law Institute, *Restatement of Trust*, Vol. 1, §§ 60 and 62; Vol. 2, § 444; 54 Am. Jur. *Trusts*, § 192. Plaintiff's temporary authorization to render transportation service on the same routes as the Transportation Authority having expired, he could not lawfully and directly operate his vehicles on those routes as a private enterprise and for his own benefit, and consequently, neither could he do so indirectly through the defendant; nor could the latter become plaintiff's trustee—either with or without an express agreement—in an enterprise which the plaintiff, by himself, could not legally operate.

This notwithstanding, plaintiff's claim is not defeated. This case does not hinge on the doctrine of constructive trust. Although this Court has been willing to "import" that doctrine into our civil law—*Cardona* v. *District Court, supra*— to prevent unjust enrichment,[5] its application must be confined, in any event, to situations unforeseen by our positive law; recognizing, of course, that such doctrine as well as

---

[5] In addition to the cases cited by the trial court, see: *García* v. *Rexach*, 65 P.R.R. 493; *Ramírez* v. *Ramírez*, 65 P.R.R. 510; *Santiago* v. *Rodríguez*, 72 P.R.R. 253 and *Heirs of Marrero* v. *Santiago*, 74 P.R.R. 763.

448

the general principles of law—apart from specific provisions of our Civil Code [6]—equally consecrates "the principle of eternal justice by virtue of which nobody is allowed to become enriched unjustly at the expense of another." [7] *Compañía Popular* v. *District Court, supra.* The existence of legal provisions applicable herein render unnecessary any further consideration of such doctrine.

 In order to determine plaintiff's right—which does not depend on the existence or nonexistence of profits from the operation by defendant of his vehicles, since plaintiff would still have that right regardless of any losses on the part of the Authority—we cannot avoid pointing out the juridical figure cut out by the facts in this case. The doctrinary function of our jurisprudence demands the determination of the source of origin of this right. Defendant is bound to pay plaintiff a reasonable sum for the daily use of his buses—as he alleged and claimed in his complaint alternatively to the restitution of profits—that obligation being one of a quasi-contractual nature of the innominate kind [8] as defined generically in our Civil Code in its § 1787 [9] arising

[6] 1 Castán, *Derecho Civil, Común y Foral*, 7th Ed., p. 716; Núñez Lagos, *El Enriquecimiento sin Causa en el Derecho Español*, p. 10 et seq.; García Morencos, *Enriquecimiento Injusto*, in the *Diccionario de Derecho Privado*, Vol. 1 pp. 1794–95; Guaroa Velázquez, *El Derecho Puertorriqueño de las Obligaciones durante la Primera Mitad del Siglo XX*, 23 Revista Jurídica de la Universidad de Puerto Rico, p. 301.

[7] 1 Castán, *Derecho Civil Español, Común y Foral*, 7th Ed., p. 713 et seq.; Puig Peña *Tratado de Derecho Civil Español*, Tome IV, Vol. II,. p. 559 et seq.; Núñez Lagos, *El Enriquecimiento sin Causa en el Derecho Español* (Madrid 1934); Díaz Pairó, *Introducción al Derecho de Obligaciones*, Vol. 2, p. 13 et seq.; García Morencos, *Enriquecimiento Injusto*, in the *Diccionario de Derecho Privado*, Vol. 1, p. 1793 et seq.; 3 Colín and Capitant, *Derecho Civil* (Spanish translation, 2d Ed.) p. 923 et seq.; Allen, *Law in the Making* (Unjust Enrichment) pp. 318 and 329; Dawson. *Unjust Enrichment* (1951).

[8] The Spanish Law has admitted the existence of innominate quasi contracts. 3 Castán, *Derecho Civil Común y Foral*, 6th Ed., p. 413. Judgments of the Supreme Court of Spain of January 8, 1909, and June 21, 1945.

[9] Section 1787.—"Quasi contracts are licit and purely voluntary acts by which the author thereof becomes obligated with regard to a third person, and, sometimes, by which there results a reciprocal obligation between the parties concerned."

from its voluntary action upon operating those vehicles, which even if not agreed upon, does not constitute an illicit act in itself, for there is no illicitness where—as here—defendant did not appropriate plaintiff's vehicles fraudulently, for the latter placed them in its possession. Nor is there any illicitness involved in their use, for although the evidence discloses that the plaintiff did not give his previous consent, that same evidence justifies the inference—because of his silence [10] when he knew that defendant had been continually using those vehicles in rendering a public service during the emergency—that he had given his consent, which is not a contract in itself, to the use of the vehicles. Under such circumstances, since there had been no previous agreement as to compensation, the use of plaintiff's vehicles by defendant creates a quasi-contractual obligation just as much as it would create a contractual obligation, if previously agreed upon.

The quasi-contract [11] is considered by modern critics as "devoid of scientific realty." [12] The Spanish Law, however, accepts it, although "almost abandoned by the present juridical science" according to the Supreme Court of Spain—Judgment of June 21, 1945—"by a legal imperative"; § 1887 of the Spanish Civil Code equivalent to § 1787 of ours. And, departing from the theory that a quasi-contract is based on implied consent—Judgment of June 12, 1889—that court affirms in another Judgment of December 21, 1945, that "the unjust enrichment is latent in all quasi-contracts." [13]

[10] Clemente de Diego, *El Silencio en el Derecho* (1925); 1 Castán, *op. cit.* p. 679.

[11] 4 Puig Peña (Vol. 2) *Tratado de Derecho Civil Español*, p. 537 *et seq.*; 2 Clemente de Diego, *Instituciones de Derecho Civil Español*, p. 322 *et seq.*; 3 Valverde, *Tratado de Derecho Civil Español*, 4th Ed., p. 764 *et seq.*; 4 Sánchez Román, *Derecho Civil*, p. 992 *et seq.*; 12 Manresa, *Comentarios al Código Civil*, 5th Ed., p. 576 *et seq.*; 2 Díaz Pairó, *Introducción al Derecho de Obligaciones*, p. 4 *et seq.*

[12] 4 Castán, *Derecho Civil, Común y Foral*, 7th Ed., p. 757.

[13] For that same criterion in the English Law see Allen, *Law in the Making*, p. 329.

In the fifth assignment appellant complains that the trial court admitted in evidence plaintiff's proof based on his own experience, concerning the profits that should have been yielded by the vehicles during the period in question, after all the operation expenses had been deducted.

The plaintiff and his witness, Mateo Hernández, testified in detail as to the cost of operation of the vehicles, including all the factors to be considered in that business, according to their experience, and they estimated the profits that the daily operation of the vehicles should have yielded the Authority during the period in issue.

Apart from the fact that the defendant cross-examined at length on those particulars, it offered, and the court admitted in evidence, the sheets prepared by its employees—collectors—containing their reports on the transportation of passengers in plaintiff's vehicles during the period in question; but after they were introduced and *admitted*, it withdrew them relying for its case on the testimony of its Administrator, who was its sole witness. It cannot complain now of its own action, which in itself entails the presumption that such evidence would have been adverse.

The sixth assignment challenges the amount of the judgment—$3,801.00—rendered against it. In view of our conclusion that plaintiff's right does not extend to the net profits produced by the operation of his vehicles, but to a reasonable sum for their use, we need not consider that assignment. However, instead we will reduce the amount of the judgment —on the basis of the evidence in the record—to the sum of $2,800 considering $20 daily as a fair compensation for the

---

This criterion, although contested, finds an expression in the French doctrine. Planiol considers that all quasi-contracts are based on unjust enrichment, stating that "when one looks for the common trait in all the facts termed quasi-contracts, the quasi-contractual obligation appears as stemming always from an enrichment obtained without consideration at the expense of another." 4 Castán, *op. cit.*, p. 758.

use of each of plaintiff's vehicles during the 35 days comprised in his claim.

The judgment will be modified to that effect, and as thus modified, it will be affirmed.